UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No.  23-CR-377 (RDM) |
| : | |
| RONALD LAMONT JENKINS, : | |
| : | |
| Defendant. : | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files its sentencing memorandum to assist the Court's consideration of the relevant issues.  As noted in the Plea Agreement, the United States calculates Defendant Ronald Lamont JENKINS' advisory Guidelines range at 70 to 87 months. The Presentence Investigation Report calculates JENKINS' Guidelines range at 77 to 96 months.

## PROCEDURAL HISTORY

On June 13, 2022, an unidentified man robbed the TD Bank branch located at 904 Rhode Island Avenue, Northeast, Washington, D.C.  That same day, FBI Agents recovered clothing items matching those worn by the bank robber as captured in surveillance video footage.  On May 30, 2023, FBI agents received notice that Defendant's DNA was present on the recovered clothing. On October 31, 2023, a federal grand jury sitting in the District of Columbia returned a one-count Indictment charging Defendant with Bank Robbery. (Docket Entry 1).  Upon return of that Indictment a bench warrant was issued; Defendant was arrested pursuant to that warrant on November 14, 2023. Minute Entry, 11/14/23.  On May 12, 2024, Defendant pled guilty to the sole count of the Indictment pursuant to a written plea agreement.  Sentencing is scheduled for August 27, 2024.

1

I. **THE OFFENSE CONDUCT**

On June 13, 2022, FBI Agents and MPD Officers responded to the TD Bank located at 905 Rhode Island Ave NE, Washington, D.C. following a report of an armed robbery. Upon arrival, FBI Agents met with Victim 1 (V1), who is the victim teller at the bank. V1 told FBI agents that VI's shift began at approximately 9:30 a.m. and the bank security guard went on break at approximately 1:27 p.m. V1 stated that an unknown Subject entered the bank at approximately 1:42 p.m., as captured in Figure 1 below – which is a still image capture from the bank's surveillance video.



*Figure 1 Subject entering the bank.*

The Subject approached the counter, and stated "open the drawer," but V1 did not realize what the Subject said at first. The Subject repeated "open the drawer" and when V1 looked at the Subject, the Subject lifted the front of his shirt, as captured in the redacted surveillance still in Figure 2 below. V1 reported that, when the Subject lifted his shirt, V1 observed the handle of a handgun located in the Subject's waistband. V1 described the handgun handle as being black and gold in color.



*Figure 2 Subject approaching the bank counter (bank teller redacted).*

V1 opened its register, and the Subject reached over the counter and grabbed an unknown amount of money in his hands, as captured in the redacted still from surveillance in Figure 3 below. The Subject then fled the bank on foot, dropping some of the stolen money in the vestibule of TD Bank, as shown in the still from surveillance in Figures 4 and 5 below.



*Figure 3 Subject grabbing money from V1's drawer (bank teller redacted).*


*Figure 4 Subject in the vestibule of the bank.*


*Figure 5 Subject fleeing the bank.*

V1 described the Subject as a black male, late 20s to early 30s years of age, approximately 5'7"-5'10", brown eyes, wearing a black mask, gloves, hooded sweatshirt, and black pants. FBI agents reviewed the TD Bank interior surveillance video of the incident and noted the following: the Subject can be seen wearing a black hooded sweatshirt, gray sweatpants, neon yellow/green gloves, and brown boots. The brand name "Champion" can be seen on the gray sweatpants, and the hood is

4

pulled over the Subject's head, covering the Subject's face. The Subject exits the bank at approximately 1:46 p.m.

FBI agents canvassed the area and located both commercial and residential surveillance video from the surrounding area. A review of this video shows the Subject traveling on foot northbound in the alley east of 10th Street, Northeast, as captured in the still from a surveillance camera in Figure 6 below. Upon viewing this footage, FBI agents began canvassing the area on foot and discovered a blue left-foot water shoe along a fence line adjacent to a residence on the 2400 block of 10th Street, Northeast. FBI Agents then asked for, and received, permission from the resident to search the yard inside the fence line.



*Figure 6 Subject in alley east of 10th Street, Northeast*

During their search of the side yard, FBI agents observed and recovered one pair of neon yellow gloves, one black Calvin Klein hooded sweatshirt, one pair of brown Nike size 8.5 men's shoes, one pair of gray "Champion" sweatpants, one black mask, and two plastic grocery-style bags as shown below in Figures 7 through 10. The agents noted that the clothing was "soaked in sweat," which was consistent with that day's temperature of 91 degrees with heat index as high as 97 degrees. See WORLD WEATHER INFO ARCHIVE, *available at https://world-weather.info/forecast/usa/ washington_1/13-june/#2022.*

5



*Figure 7 Neon yellow gloves.*



*Figure 8 Calvin Klein hooded sweatshirt.*





*Figure 9 Brown Nike shoes and black mask.*



*Figure 10 Recovered gray "Champion" sweatpants seen during robbery.*

FBI agents then located surveillance video from JS Liquor located at 936 Rhode Island Avenue, Northeast – which is in close proximity to both the 2400 block of 10th Street, Northeast and the TD Bank branch.

The JS Liquor surveillance video shows an unknown male enter the store wearing a long white sleeve shirt, dark pants, a black skull cap, and a blue surgical mask, wearing a blue water shoe on his right foot and a white sock on his left foot, as shown in the still below in Figure 11. That the subject is only wearing a blue water shoe on his right foot is consistent with the recovery of the clothing used in the robbery and a left-foot blue water shoe. The unknown male seen in Figure 11 also matches the general build of the Subject from the bank robbery. The JS Liquor video shows that the Subject remained inside the store for several minutes adjusting his clothes, and then purchasing juice, cigar, and a lighter with paper currency.


*Figure 11 Likely Subject entering JS Liquor.*


*Figure 12 Likely Subject adjusts clothes in JS Liquor.*


*Figure 13 Likely Subject puts apparent U.S. Currency in his pocket.*



*Figure 14 Likely Subject makes a purchase with U.S. Currency.*

Using both residential and commercial surveillance video voluntarily provided to law enforcement, FBI agents were able to track the Subjects movements from JS Liquor to the Prince George's Plaza Metro Station in Prince Georges, County, Maryland. Based on the evidence recovered, FBI Agents' theory was that the Subject likely lived in Maryland, and that he had robbed the bank while wearing the clothing discovered in the 2400 block of 10th Street, Northeast, over the top of the clothing identified seen in the JS Liquor video.

### *Identifying Defendant as the Subject that Robbed the TD Bank*

In order to identify the Subject of the TD Bank robbery, FBI Agents reviewed law enforcement reports from other robberies in the District of Columbia, Maryland, and Virginia, specifically those involving the *modus operandi* of wearing two sets of clothes to commit the robbery and removing the outer clothes shortly thereafter in order to make a getaway. Through that investigation, FBI Agents learned of the armed robbery of a Lowe's Home Improvement Store located at 16301 Heritage Blvd. in Bowie, Maryland on August 5, 2021. Bowie is within Prince George's County, Maryland.

As recorded in police reports, Bowie City Police Officers responded to the Lowe's at

9

approximately 3:30 p.m., and met with the victim cashier (V2), who stated that an unknown male Subject approached V2 posing as a customer and handed IT a bag of Skittles candy to purchase. Once the register was open, the Subject produced a knife and reached over the counter and grabbed the register. In fear for ITs safety, V2 backed away from the register. The Subject took approximately $250 in United States Currency and fled. A review of surveillance video at the Lowe's Home Improvement Store revealed that the Subject was wearing a black hooded sweatshirt, gloves, black pants with green zipper pockets, and black shoes with white soles, as shown in the stills from surveillance below.



While canvassing the area, Bowie City Police Officers received a call of a suspicious male running through residential backyards near the Lowe's Home Improvement Store. Shortly thereafter, a male Subject was located walking out of the wood line behind the caller's residence. The officers stopped the male Subject, who was later identified as Defendant Ronald Lamont Jenkins. Defendant's clothing was wet, and his shoes did not have shoelaces. Prince George's County K9 Officers conducted an article search of the immediate area. The K9 track led directly from Defendant into the wood line where the following items were recovered: a twenty-dollar bill,

a black hooded sweatshirt, black pants with green zipper pockets, and black shoes with white soles.

The clothes matched the clothes worn by the Lowe's Home Improvement Store robbery Subject. Prince George's County Officers submitted the clothing for forensic examination; DNA samples were recovered from those clothes and from Defendant, and both DNA samples were submitted to the Combined DNA Index System (CODIS). Defendant was charged with: Theft Between $100 and $1,500, Second Degree Assault, and Reckless Endangerment in the District Court for Prince George's County Case Number 0E00702345. Defendant was ordered held without bond, and the case was bound over to the Prince George's County Circuit Court. That case was resolved by *nolle prosequi* on September 14, 2021.

*DNA Evidence Identifying Defendant as the TD Bank Robber*

After learning of the Lowe's Home Improvement Store robbery, and the submission of DNA evidence to CODIS in that case, FBI agents submitted the clothing recovered from the TD Bank robbery for DNA examination. On March 3, 2023, a forensic examiner at the FBI Laboratory issued a report noting that the DNA recovered from the clothing worn during the TD Bank robbery was compared with DNA profiles stored in CODIS, and that Defendant's DNA was a possible match.[1] In order to confirm the presence of Defendant's DNA on the clothing recovered from the 2400 block of 10th Street, Northeast, FBI Agents applied for and obtained Search Warrant 23-SW-75 authorizing the collection of Defendant's DNA via buccal swab for forensic comparison.

On May 30, 2023, a forensic examiner at the FBI Laboratory issued a report describing the comparison of DNA samples taken from the clothing work during the TD Bank robbery and Defendant's buccal swab, and confirming the presence of Defendant's DNA on that clothing:

11

**Item 1(1) (Swabbing from inside neckline, underarm, and cuff regions of jacket)**

Male DNA[2] was obtained from item 1(1). Item 1(1) was interpreted as originating from three individuals.

The DNA results from item 1(1) are 13 quadrillion times more likely if JENKINS and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENKINS | $1.3 \times 10^{16}$ (13 quadrillion) | **Very Strong Support for Inclusion** |



**Item 5(1) (Swabbing from entire inside of left glove)**

Male DNA[2] was obtained from item 5(1). Item 5(1) was interpreted as originating from two individuals.

The DNA results from item 5(1) are 420 septillion times more likely if JENKINS and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENKINS | $4.2 \times 10^{26}$ (420 septillion) | **Very Strong Support for Inclusion** |

**Item 6(1) (Swabbing from entire inside of right glove)**

Male DNA was obtained from item 6(1). Item 6(1) was interpreted as originating from one individual.

The DNA results from item 6(1) are 920 septillion times more likely if JENKINS is a contributor than if an unknown, unrelated person is a contributor.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENKINS | $9.2 \times 10^{26}$ (920 septillion) | **Very Strong Support for Inclusion** |



**Item 8(1) (Swabbing from inside mouth and face area of mask)**

Male DNA[2] was obtained from item 8(1). Item 8(1) was interpreted as originating from three individuals.

The DNA results from item 8(1) are 2.8 septillion times more likely if JENKINS and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENKINS | $2.8 \times 10^{24}$ (2.8 septillion) | **Very Strong Support for Inclusion** |



*Fingerprint Evidence Identifying Defendant as the TD Bank Robber*

FBI Agents also submitted two plastic bags recovered from the 2400 block of 10th Street, Northeast, as well as a $100 bill recovered during the collection of evidence, for possible fingerprint comparison. On March 30, 2023, a forensic examiner at the FBI Laboratory issued a report indicating that a fingerprint was recovered from one of the recovered plastic bags. The report matched the fingerprint from the plastic bag to Defendant's known fingerprint, which was on file from his prior arrests and convictions.

FBI Laboratory Evidence Designator(s):

| | | |
|---|---|---|
| Item 9 | Plastic bag from side yard of 24█ 10th St. NE | (1B3, E6552516) |
| Item 10 | Plastic bag from side yard of 24█ 10th St. NE | (1B3, E6552516) |
| Item 11 | U.S. Currency totaling $100.00 | (1B1, E5489616) |

Individual(s) for Comparison

| Letter Designation | Name | UCN/DOB | Record Information |
|---|---|---|---|
| A | RONALD LAMONT JENKINS | 539641PC6 | Obtained from NGI latent search |

The table below lists results of friction ridge print examinations:

Results of Examinations
JENKINS (A)

| Item Number | Analysis | | | | Comparison | Evaluation | | | | NGI Comparisons |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Fingerprint | Palm print | Impression | Individuals | Anatomical Source | Identification | Exclusion | Inconclusive | |
| Item 9 | 1 | P1 | --- | --- | A | #1 | A | --- | --- | Yes |
| Total prints suitable for comparison: | 1 | | | | | | | | | |

## II. UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, United States v. Booker provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); United States v. Brown, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. Gall v. United States, 590 U.S. 38, 49 (2007); see also United States v. Dorcely,

13

454 F.3d 366, 375 (D.C. Cir. 2006) ("Booker has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85, 108-09 (2007) (quoting Rita v. United States, 551 U.S. 338, 347-50 (2007)); Dorcely, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. United States v. Flores, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-Booker world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." Witte v. United States, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd.

Dorcely, 454 F.3d at 375. Moreover, BOYD is liable both for his own actions, as well as any actions of his co-conspirators which were: within the scope of the conspiracy, undertaken in furtherance of the conspiracy, and reasonably foreseeable to BOYD in connection with the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B); United States v. Childress, 58 F.3d 693, 724-25 (D.C. Cir. 1995).

### A. Calculation of JENKINS' Adjusted Offense Level

Pursuant to the written plea agreement, the parties agreed to the following Guidelines

calculation, however – as noted – Defendant reserved the right to object to the application of U.S.S.G. § 2B3.1(b)(2)(D).

| | | |
|---|---|---|
| U.S.S.G. § 2B3.1(a) | Base Offense Level | 20 |
| U.S.S.G. § 2B31.(b)(1) | Financial Institution | +2 |
| U.S.S.G. § 2B3.1(b)(2)(D) | Dangerous Weapon Used | +4[1] |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | - 3 |
| | Total | **23** |

### B. Enhancement under U.S.S.G. § 2B3.1(b)(2)(D)

On June 13, 2022, FBI Agents interviewed C.S., the teller that interacted with Defendant during the robbery. During that interview, C.S. stated that, at approximately 1:42pm, an unknown man entered the bank and approached her counter. C.S. could not identify the man because of the mask, gloves, and other clothing he was wearing. When he was close enough or C.S. to hear, the man said "open the drawer" in a low voice and repeated that phrase when it was clear that C.S. didn't hear him the first time. The man then lifted up the front of his shirt and displayed the handle of a handgun, located in his waistband. C.S. said that the firearm was black and gold in color. C.S. stated that she was afraid for her life and thought she was going to get shot if she didn't do what the man told her to do. C.S. opened the cash register and the man reached over the counter and grabbed an unknown amount of cash before fleeing the bank and leaving a trail of money behind him. C.S. then triggered the alarm.

The United States expects to call C.S. as a witness at sentencing.

### C. Calculation of BOYD's Criminal History Category

U.S.S.G. § 4A1.1 governs the calculation of a defendant's criminal history for Guidelines' purposes. Section 4A1.1 assigns "points" for each of a defendant's prior sentences of

---

[1] The United States notes that the Probation Office disagrees with the United States' calculation, specifically they added a five-level enhancement for "brandishing" a firearm rather than the four-level enhancement for "using" a firearm. (Docket Entry 20).

imprisonment; the number of criminal history "points" assigned to each sentence depends on the severity of the sentence and when it was imposed. U.S.S.G. §§ 4A1.1(a)-(c) and n.3; 4A1.2(e).

Defendant was convicted of Attempted Robbery with a Deadly Weapon in Prince George's County, Maryland, Case Number CT081784X. On September 3, 2009, Defendant was sentenced to 20 years' imprisonment with all but 10 years suspended, to be followed by 5 years' probation. This conviction warrants 3 criminal history points pursuant to U.S.S.G. § 4A1.1.

Defendant was convicted of Robbery with a Deadly Weapon in Prince George's County, Maryland Case Number CT081728X. On September 3, 2009, Defendant was sentenced to 2 years' imprisonment, and the sentence was ordered to run concurrently to Case Number CT081784X. This conviction warrants 1 criminal history point pursuant to U.S.S.G. § 4A1.1(d).

Defendant was convicted of First Degree Malicious Burning in Charles County, Maryland Case Number C-08-CR-18-000403. On August 29, 2018, Defendant was sentenced to five years' imprisonment, with all but 18 months suspended, to be followed by 5 years supervised probation. On August 31, 2023, Defendant was found to be in violation of his probation and was sentenced to 42 months' imprisonment, with all but 10 days suspended, to be followed by 5 years supervised probation. This offense warrants 3 criminal history points pursuant to U.S.S.G. § 4A1.1(a).

Accordingly, your client is estimated to have 8 criminal history points, lacing him in Criminal History Category IV

**D.     Calculation of Advisory Guidelines Level**

With an adjusted offense level of 23, and a Criminal History Category of IV, the Sentencing Table of the United States Sentencing Guidelines provides for an advisory sentencing range of 70 months to 87 months.

### III. UNITED STATES' ANALYSIS OF THE STATUTORY SENTENCING FACTORS

#### A. The Nature and Circumstances of the Offense and Defendant's History and Characteristics

The nature and circumstances of this offense, and Defendant's history and characteristics, both weigh in favor of a sentence at the high end of the Guidelines range. In this case, Defendant walked into a bank branch in broad daylight, brandished a firearm, and stole money from the register. As noted above, Defendant has numerous prior convictions and arrests for similar robbery, and his most recent conviction resulted from setting a fire in his mother's home.

#### B. The Need to Reflect the Seriousness of the Offense; Promote Respect for the Law; and Provide Just Punishment

The Court must also consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). With respect to this factor, the United States respectfully submits that Defendant's criminal history and his conduct in this case combine to weigh in favor of a sentence at the high end of the Guidelines range. of federal drug and gun laws while on supervision for a Robbery in the State of Maryland weigh in favor of a sentence at the high end of the applicable Guidelines range.

#### E. The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of the BOYD

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The Court must also consider "the need for the sentence imposed. . . to protect the public from further crimes of the BOYD. . . ." 18 U.S.C. § 3553(a)(2)(D). With respect to this factor, the United States respectfully submits that Defendant's criminal history and his conduct in this case combine to weigh in favor of a sentence at the high end of the Guidelines range. of federal drug and gun laws while on supervision for a

Robbery in the State of Maryland weigh in favor of a sentence at the high end of the applicable Guidelines range.

IV.     **UNITED STATES' SENTENCING RECOMMENDATION**

According to the terms of the Plea Agreement, and for the reasons described above, the United States recommends a sentence of **87** months incarceration as to Count One, to be followed by three years of supervised release. The United States respectfully recommends that, as part of his Supervised Release, Defendant be screened for admission into the Court's Rebuilding Our Lives Program, formerly known as Re-Entry Court, and, if he is found to be eligible for that program, that he be ordered to participate.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:     */s/ James B. Nelson*
                JAMES B. NELSON
                D.C. Bar No. 1613700
                Assistant United States Attorney
                Federal Major Crimes Section
                601 D Street, N.W.
                Washington, D.C. 20530
                (202) 252-6986
                james.nelson@usdoj.gov